## In re LEADER FURNITURE CO.

### No. 19054.

District Court, E. D. Pennsylvania.

Jan. 9, 1939.

John G. Callender and George H. Kaercher, both of Pottsville, Pa., for petitioner.

Jenkins, Bennett & Libby, of Philadelphia, Pa., for trustee.

L. Halpern Miller and Wexler & Weisman, all of Philadelphia, Pa., for Acceptance Corporation.

KIRKPATRICK, District Judge.

This case presents a contest between two successive assignees of the bankrupt's accounts receivable. Each assignee advanced money to the bankrupt upon the security of its assignment. The bankrupt was in the furniture business, and made sales upon bailment lease contracts, at the same time opening a separate account upon its books against each of the purchasers.

When Acceptance Corporation, the prior assignee, made its loan and took the assignment, the bankrupt turned over to it all the bailment lease contracts corresponding to the accounts and made a pencil notation at the top of each page of its ledger upon which an assigned account was kept. In each case the notation was (for example) "B.S. 12/20/34." The date was the date of the assignment. "B.S." meant Biglow Stamford Company, but what that had to do with the case does not appear from the record. In addition some of the pages bore a notation (for example), "4/13/34 L.N.N." That referred to the date upon which the buyer's landlord was notified that the goods had been sold under a bailment lease. It had nothing to do with the assignment and was for the protection of the bankrupt against the landlord at the time the furniture was sold.

When the Bank, the subsequent assignee, made its loan it sent one of its employees to the bankrupt's place of business who took the bankrupt's books and made a selection of accounts which he directed to be included in the assignment. No particular accounts were offered him, and he made no inquiry about them, nor did he ask to see the bailment lease contracts corresponding to the accounts. Apparently he did not notice the notations. If he had inquired as to their meaning, it is a fair inference that he would have been told what they meant and would have known that the accounts had been assigned, for there is no proof of fraud, and the situation seems to have arisen entirely out of carelessness and oversight.

The case is ruled by Lasser v. Philadelphia National Bank, 321 Pa. 189, 183 A. 791, 792, unless its facts can be distinguished upon the question of notice. The Lasser decision adopted the rule embodied in Section 174 of the Restatement of the Law of Contracts to the effect that, "If an assignor's right against the obligor is * * * held in trust for" a third person "an assignee who purchases the assignment for value in good faith without notice of the right of such person cannot be deprived of the assigned right or its proceeds." Parenthetically it may be said that Section 173 of the Restatement is clearly inapplicable.

It is true that the contest involved in the Lasser case was not between successive assignees, but was between a principal for whom the bankrupt acted as a collecting agent and a subsequent assignee of the funds so collected, but the essential thing was that the funds collected were held in trust by the bankrupt for the prior party who claimed against the assignee. In this case Acceptance permitted the bankrupt to continue to make collections on the assigned accounts, but as its agent, in the same way that the bankrupt made collections in the Lasser case. It did not notify the purchasers of furniture that the accounts had been assigned, and to that extent conferred upon the bankrupt the indicia of ownership.

The opinion in the Lasser case states, "Appellant concedes that defendant was a bona fide assignee of the accounts without notice of appellant's claim to a share therein, and for a present valuable consideration, and that appellant had conferred upon Lupton [the bankrupt] the indicia of ownership. These facts determine the issue." These facts all exist in the present case with the exception of "without notice."

The referee made no fact finding upon the question of notice; so I shall have to.

█ The general rule of Pennsylvania is that whatever is sufficient to put a party on inquiry amounts to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to knowledge of the requisite facts by the exercise of ordinary diligence and prudence.

█ In this case the Bank could tell from the bankrupt's books that a great part of its business was done upon bailment leases (it must have known it anyway), and there is evidence that it also knew that the bankrupt had been assigning its accounts. Inquiry would have revealed that the bailment leases in question were not in the bankrupt's possession and would probably have disclosed the prior assignment. These facts, together with the penciled notations upon the ledger sheets were, in my judgment, sufficient to put the Bank on inquiry, and there was certainly a total lack of diligence upon its part.

█ I therefore make the fact finding that the Bank was not an assignee of the accounts without notice.

█ The general rule that, in the absence of intervening equities, priority in time as between two assignments gives superior legal right applies.

The order of the Referee is affirmed.